

IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>JUSTINE E DEL MURO | Case Number: 1916-CV26528 |
|---|---|
| Plaintiff/Petitioner:<br>REGINALD MOORE | Plaintiff's/Petitioner's Attorney/Address<br>MARK SCHMITZ<br>BELL LAW, LLC<br>2600 GRAND BLVD STE 580<br>KANSAS CITY, MO 64108 |
| **vs.** | |
| Defendant/Respondent:<br>GREENSKY, LLC | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Other Tort | |
| | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:** GREENSKY, LLC
**Alias:**
RA: NATIONAL REGISTERED AGENTS
289 S. CULVER STREET
LAWRENCEVILLE, GA 30046

**PRIVATE PROCESS SERVER**

*COURT SEAL OF*

*JACKSON COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

05-NOV-2019
Date

_____
Clerk

Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*

Subscribed and sworn to before me on _____ (date).

My commission expires: _____          _____
　　　　　　　　　　　　　　　　Date          Notary Public

| **Sheriff's Fees** | | |
|---|---|---|
| Summons | $ _____ | |
| Non Est | $ _____ | |
| Sheriff's Deputy Salary | | |
| Supplemental Surcharge | $ 10.00 | |
| Mileage | $ _____ | ( _____ miles @ $. _____ per mile) |
| **Total** | $ _____ | |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**EXHIBIT 2**

OSCA (7/2018) SM30 (JAKSMCC) For Court Use Only: Document Id # 19-SMCC-11659 1 of 1 Civil Procedure Form No. 1, Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:20-cv-00002-FJG   Document 1-2   Filed 01/02/20   Page 1 of 28

# SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.


Circuit Court of Jackson County

Revised 7/3/13                          Service Information - Attorney

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT KANSAS CITY

| | | |
|---|---|---|
| **REGINALD MOORE** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.** |
| **v.** | ) | |
| | ) | **Division** |
| **GREENSKY, LLC** | ) | |
| **SERVE:** | ) | |
| **National Registered Agents, Inc.** | ) | |
| **289 S. Culver Street,** | ) | **JURY TRIAL DEMANDED** |
| **Lawrenceville, GA 30046** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S CLASS ACTION PETITION FOR DAMAGES

COMES NOW, Plaintiff, by and through his undersigned counsel, and states and alleges as follows:

### PARTIES

1.　Plaintiff Reginald Moore ("Moore" or "Plaintiff") is an individual Missouri consumer.

2.　Defendant GreenSky, LLC ("GreenSky" or "Defendant") is a Georgia Limited Liability Company. At this time, Plaintiffs do not know the identity of each of GreenSky's members, and therefore does not know the domicile of GreenSky.

### JURISDICTION AND VENUE

3.　Jurisdiction and venue in Jackson County, Missouri are proper because most or all of the material acts occurred in Kansas City, Missouri, which is located in Jackson County.

1

Jurisdiction and venue in this Court are also proper pursuant to 408.562 RSMo. in that Plaintiff resides in Kansas City, Missouri.

## FACTS COMMON TO ALL COUNTS

4.　　Moore was born in 1947 and is retired on a fixed income after decades of service in the U.S. Army and Army Reserves. His fixed monthly income is approximately $1,450.

5.　　On or about July 13, 2016, Moore signed a contract for a solar system with A1 Solar Source, Inc. ("A1").

6.　　The solar system ultimately cost approximately $24,000, gross of rebates and interest.

7.　　Plaintiff was provided at some point in time with a GreenSky Installment Loan Agreement ("GILA") dated July 13, 2016.　The top of the GILA prominently displays GreenSky's name:

## GreenSky® Installment Loan Agreement
### RETAIL INSTALMENT CREDIT AGREEMENT

8.　　That GILA, however, was not signed.　Upon information and belief, few, if any, GILAs are ever actually signed by the consumer.[1]

9.　　The GILA listed an amount of $10,000.00 to be financed.

10.　　The interest rate (APR) listed on the GILA was 26.99%.

11.　　The related charge with interest listed on the GILA, should Plaintiff require eighty-four (84) monthly payments of $298.11 to pay off the $10,000.00, was $15,041.24.

---

[1] According to GreenSky's Frequently Asked Questions, "There is no need to physically sign and/or return your Loan Agreement You accept the terms and electronically sign the Loan Agreement when you authorize the contractor/merchant to process a transaction on your account." https://www.greenskyonline.com/greensky/faq (last visited September 27, 2019).

2

Electronically Filed - Jackson - Kansas City - October 02, 2019 - 03:35 PM

12.     This monthly payment would amount to approximately twenty percent of Moore's fixed monthly income.

13.     The GILA provided for a year of deferred interest. The GILA represented that one-year period as a time during which twelve payments of zero dollars were due.

14.     The GILA also included a GreenSky-branded "shopping pass," which was to act like a transaction-specific credit card with which Plaintiff could effect his purchase of the solar panels:



15.     Upon information and belief, GreenSky provides the shopping pass to the merchants directly.

16.     The GILA also included a solar system-specific provision seeking to give the "Lender" a security interest in solar systems purchased under the agreement: "To the extent applicable," it held, "the foregoing security interest shall constitute a purchase money security interest."

17.     The "Lender" on the GILA was listed as being Regions Bank, of Alabama.

18.     However, Plaintiff was to make payments under the GILA directly to Defendant and not to Regions Bank.

19.     Moore's solar system took some amount of time—approximately three or four months—to get installed and functioning.

20.     Defendant has described itself as "a link between contractors, their customers and banks" that "bring[s] everyone together and simplif[ies] the loan process, from application, to decision/approval, to payments."[2]

21.     In the Summary of Initial Public Offering pitchbook on GreenSky that was compiled by Evolve Capital Partners (a boutique investment bank), Defendant is described as a "platform" that supports "the full transaction lifecycle, including credit application, underwriting, real-time allocation to bank partners, funding, settlement, and servicing."[3]

22.     This pitchbook also averred that Defendant maintained a "robust [and] integrated regulatory compliance framework."

23.     GreenSky has derived the vast bulk of its revenues from charging its merchant-partners for the credit it facilitates. Per the 10-K for the 2018 Fiscal Year which GreenSky filed with the SEC: "We [GreenSky] derive most of our revenue and profitability from upfront transaction fees that merchants pay us every time they facilitate a transaction using our platform."[4]

24.     On information and belief, these merchant fees are at least partially a function of the loan volume and/or underlying interest rates on the loans that GreenSky originates.

25.     Per that same 10-K, Defendant also reported credit-related "incentive payments" from its bank partners and that its platform "auto-populate[s] applications using a mobile device's location data and a scan of the consumer's driver license, eliminating unnecessary

---

[2]     *See* GREENSKY.COM, Frequently Asked Questions, https://www.greenskyonline.com/greensky/faq (last visited Sept. 27, 2019).
[3] *See* EVOLVE CAPITAL PARTNERS, *GreenSky, Inc. Summary of Initial Public Offering* (May 2018), *available at* https://www.evolve-capital.com/wp-content/uploads/2018/06/Greensky-IPO-Profile.pdf (last visited September 27, 2019).
[4] http://investors.greensky.com/static-files/ebb1d1ff-3ccd-46c7-b021-060c7c6fff25 (Filed March 15, 2019), p. 5 (last visited September 27, 2019).

4

Electronically Filed - Jackson - Kansas City - October 02, 2019 - 03:35 PM

effort."

26.     On information and belief, GreenSky's partner banks play no role in verifying the identities of Defendant's customers.

27.     Despite Defendant's role in the "full transaction lifecycle," including loan origination, GreenSky has maintained that it is just a "service provider and program administrator."[5]

28.     Defendant enters into merchant program agreements ("MPA"s) with the merchants that participate on its platform.

29.     GreenSky entered into a MPA with A1. This MPA detailed the terms and conditions purporting to define the relationship between Defendant and A1.

30.     One of the provisions of this MPA stated: "GreenSky may offer Loan(s) to Merchant's qualified customers as contemplated by this Agreement. As between the parties, *GreenSky has sole authority to prescribe the terms and conditions of the credit application, the Loan Agreement, and each Loan (including, without limitations, interest rate maximum amount and term)*. GreenSky may at any time, in its sole discretion (including at the direction of a Funding Bank), prospectively modify such terms and conditions with respect to Loans for which approval is granted subsequent to the time of the modification. *GreenSky may in its sole discretion* (including at the direction of a Funding Bank) change the credit standards at any time without notice to Merchant and may *reject and accept credit applications* in its sole discretion . . ." (emphasis added).

31.     Beneath this provision, the MPA also stated that "*GreenSky shall own the Loans,* including the Borrower names and other Borrower Information, *and, shall bear the credit risk*

---

[5]     *See id. See* GREENSKY.COM, Frequently Asked Questions, https://www.greenskyonline.com/greensky/faq (last visited Sept. 27, 2019).

5

***for the Loans.*** Merchant acknowledges and agrees that it shall have no ownership interest in the Loans." (emphasis added)

32.     GreenSky purports to offer merchants training, with such training being mandatory for "sales consultants or any other person who might interact with applicants or customers must complete this training as a condition of your participation in the GreenSky program."[6]

33.     GreenSky also purports to perform some amount of due diligence with regard to the merchants on its platform.

34.     In its Sponsor/Merchant Compliance Guidelines for GreenSky Loan Programs, dated as effective on November 10, 2015, Defendant stated: "***Although all merchants may be subject to claims of unfair, deceptive or abusive acts or practices, merchants who specialize in energy efficiency and alternative energy face additional risk from customers claiming deception during the sales process if they are not satisfied with the projects.***" (emphasis added). The guidelines do not state *why* this non-intuitive assertion would be true.

35.     Defendant was co-founded by David Zalik ("Zalik"), who currently serves as CEO and Chairman of GreenSky's board.

36.     Zalik also co-founded the RockBridge Commercial Bank ("RockBridge") as a Georgia-chartered bank in 2007.

37.     Zalik was an officer and/or director of RockBridge.

38.     In late 2009, RockBridge was shuttered by the Georgia Department of Banking and Finance, with the FDIC named as receiver.

---

[6] Per Defendant's own materials, dated Jan. 1, 2015.

6

Electronically Filed - Jackson - Kansas City - October 02, 2019 - 03:35 PM

39.     In 2010, the FDIC commissioned a Material Loss Review of RockBridge in order to determine the causes of the bank's swift demise and evaluate the FDIC's oversight in that regard.

40.     The FDIC reported that, as of June 2010, RockBridge's estimated loss to its Deposit Insurance Fund would be approximately $100 million.

41.     The FDIC's Material Loss Review found: "RockBridge's failure [could] be attributed to (1) *inadequate management and Board of Directors (Board) oversight*; (2) a high concentration in Commercial Real Estate (CRE) lending; and (3) *poor credit underwriting and credit administration. Management and the Board pursued a business strategy that deviated from its original business plan without having the appropriate management expertise and internal controls in place to adequately mitigate the corresponding risks*." (emphasis added)

42.     On information and belief, Defendant GreenSky has profited substantially from a pattern and practice of turning a blind eye to and/or failing to reasonably assess and manage the widespread, predatory, opaque, and improper business practices of various merchants on its platform, particularly within the solar sector.

43.     Additionally, given the aforementioned facts, Defendant GreenSky essentially operates as a variety of "rent-a-bank" scheme in which (primarily) various larger regional banks lend their names to and fund GreenSky's loan program with minimal or even no knowledge of the underlying loans, identities of individual consumers, or merchants within the GreenSky program.[7]

---

[7] *See* ATTORNEYS GENERAL FOR THE DISTRICT OF COLUMBIA, MASSACHUSETTS, CALIFORNIA, COLORADO, ILLINOIS, IOWA, MARYLAND, NEW JERSEY, NEW YORK, NORTH CAROLINA, OREGON, PENNSYLVANIA, VIRGINIA, AND CONNECTICUT , *Request for Information on Small-Dollar Lending* (Jan. 22, 2019), *available at* https://www.fdic.gov/regulations/laws/federal/2018/2018-

44.     As stated above, per GreenSky's MPAs, Defendant, as to merchants, retains the "sole authority" and "sole discretion" to set and modify relevant loan terms and conditions, including denial of applications and setting of interest rates and repayment periods.

45.     As detailed above, Defendant retained extensive rights regarding the establishment of credit terms that were *in addition to* those that may be given at the direction of bank partners.

46.     As stated above, Defendant contracts to bear the "credit risk" for the loans made via its platform.

47.     Per Defendant's own website, "[c]redit reporting is made in the GreenSky Program name."[8]

48.     GreenSky does not disclose the "merchant fees" it receives as part of any given transaction to the relevant consumer.

49.     These merchant fees are a de facto finance charge.

50.     Though it claims to not be a lender, Defendant in reality acts and has acted as a lender. Specifically, GreenSky acts as a type of relender that has profited by borrowing funds from partner banks and charging, whether directly or indirectly, merchants and/or individual consumers de facto loan origination fees and/or interest rate spreads.

51.     Though it claims to not be a lender, Defendant originates loans and defines the terms of credit actually offered to consumers.

52.     Though it claims to not be a lender, GreenSky—not the partner banks—ultimately determines which merchants and consumers will receive credit via its platform.

---

small-dollar-lending-3064-za04-c-038.pdf, p. 2. (last visited September 27, 2019) (describing what a "rent-a-bank" scheme traditionally entails).

[8]     *See* GREENSKY.COM, Frequently Asked Questions, https://www.greenskyonline.com/greensky/faq (last visited Sept. 27, 2019).

8

53. Though it claims to not be a lender, GILAs are presented to consumers, who become significantly exposed to the GreenSky brand and who are to make payments directly to GreenSky, while the name of the relevant partner bank is revealed only in fine print on the GreenSky-branded contract.

54. Though it claims to not be a lender, Defendant controls the full credit "transaction lifecycle."

55. Defendant has acted as a lender in Missouri (to be discussed in greater detail below).

56. Consumer installment lenders are required to be registered/licensed in Missouri, thus becoming subject to the regulatory purview of the Missouri Division of Finance.[9]

57. Despite its lending activities in Missouri, Defendant had had, as of September 27, 2019, no registration, license, and/or communication with the Missouri Division of Finance. Thus, Defendant has long operated in Missouri as an unlicensed consumer installment lender.

58. In the alternative with regard to Missouri licensing requirements GreenSky has, as described, acted as a "credit service organization" (to be discussed in greater detail below). However, Defendant has also failed to register in Missouri as such.[10] Thus, in the alternative, Defendant has long operated in Missouri as an unlicensed credit service organization.

59. In May 2019, Defendant disclosed that Regions Financial Corp., the parent of the aforementioned Regions Bank, would not be renewing its funding relationship with GreenSky.

60. On information and belief, Defendant has traditionally charged, on average, solar merchants approximately twice the level of fees ("merchant" fees on the underlying extensions

---

[9] *See* MISSOURI DIVISION OF FINANCE, Consumer Installment Lenders, https://finance.mo.gov/consumercredit/installlenders.php.
[10] *See* MISSOURI DIVISION OF FINANCE, Credit Service Organizations, https://finance.mo.gov/consumercredit/creditservice.php.

Electronically Filed - Jackson - Kansas City - October 02, 2019 - 03:35 PM

of credit) as non-solar merchants (approximately 14% versus 7%). But again, these are de facto finance charges and are ultimately passed on to the consumers.

61. On information and belief, GreenSky typically disburses funds to its merchant-partners before the individual consumer receives the GILA, including its Truth-in-Lending Act (TILA) disclosures, or the shopping pass. Thus, the funds would be disbursed (and according to GreenSky's website, the Terms accepted) before the consumer would even receive a copy of those Terms. Upon information and belief, GreenSky always, or almost always, disburses the funds before the work even begins.

62. Defendant also offers a "split plan" loan product, which entails two account numbers, APRs, and sets of terms even though the funds would be going to the same merchant for the same project as if the funds were distributed as just one loan. On information and belief, it is normal for consumers to sign such split-plan loan agreements before seeing the relevant TILA disclosures and loan terms.

63. Moore was able to pay off the GreenSky loan in August 2017, paying GreenSky approximately $12,625.86. The amount he paid thus included $10,000.00 initial interest and $2,625.86 in illegal interest and fees.

## FACTS CONCERNING MISSOURI LENDING LAW AND NON-COMPLIANCE BY GREENSKY

64. Pursuant to § 408.510 RSMo., "consumer installment lenders" are required to be registered in Missouri.

65. Pursuant to § 408.510 RSMo., a consumer installment lender "means a person licensed to make consumer installment loans."

10

Electronically Filed - Jackson - Kansas City - October 02, 2019 - 03:35 PM

66. Pursuant to § 408.510 RSMo., a consumer installment loan "means secured or unsecured loans of any amount and payable in not less than four substantially equal installments over a period of not less than one-hundred and twenty days."

67. As described above, GreenSky loaned Plaintiff $10,000 with a payment schedule of eighty-four (84) monthly payments of $298.11. It is therefore a "consumer installment loan" as defined by § 408.510 RSMo.

68. GreenSky has not registered with, nor is it licensed by, the Missouri Division of Finance.

69. Defendant has thus acted as a consumer installment lender in Missouri without registering with the Missouri Division of Finance.

70. Pursuant to § 367.100 RSMo. (the section of law that § 408.510 amended), Defendant is also a "lender" of "consumer credit loans."

71. Lenders who are properly licensed in Missouri are subject to various regulatory and reporting requirements.

72. For example, pursuant to § 367.140 RSMo., every lender must pay an annual registration fee.

73. Pursuant to § 367.140(2) RSMo., licensed lenders are to receive a certificate of registration to put on display.

74. Pursuant to § 367.150 RSMo., registered lenders are obligated to file annual reports with the state.

75. Pursuant to § 367.160 RSMo., licensed lenders are to be subject to inspection by Division of Finance authorities.

76.     Pursuant to § 367.185 RSMo., non-depository lenders are required to follow various solicitation and disclosure requirements.

77.     Pursuant to § 367.200 RSMo., officers, agents, or representatives of lenders who do not comply with the aforementioned provisions "shall be deemed guilty of a misdemeanor."

78.     Pursuant to § 367.205 RSMo., registered lenders must obtain an annual audit by a CPA firm of which at least one partner is a licensed Missouri accountant.

79.     Pursuant to § 408.140.1 RSMo., ***consumer installment lenders are capped at charging ten percent of principal (not to exceed $100) as a fee on closed-end loans with a duration of greater than thirty days***.[11]

80.     GreenSky has routinely charged fee amounts far greater than $100 on closed-end loans.

81.     Pursuant to § 408.510 RSMo., consumer installment lenders may not charge fees beyond those specified in particular sections of the statute.

82.     Because Defendant has consistently made consumer installment loans in Missouri without registering with the Missouri Division of Finance, and which loans violate Missouri's laws, it has repeatedly violated (and continues to violate) numerous Missouri statutory provisions.

## FACTS CONCERNING THE MISSOURI CREDIT SERVICES ORGANIZATION ACT ("CSOA") AND NON-COMPLIANCE BY GREENSKY

83.     Pursuant to § 407.637 RSMo., a "credit service[s] organization is a person who, with respect to the extension of credit by others and in return for the payment of money or other

---

[11] While § 408.140.1(1) states that it applies only to "open-end credit" loans, the more specific statute of § 408.510 overrides that restriction when it provides that *all* consumer installment lenders "shall contract for and receive interest and fees in accordance with" the provisions of § 408.140—which include § 408.140.1(1)'s 10% and $100 cap on fees that may be charged by the lender.

12

valuable consideration, provides or represents that the person can or will provide any of the following services:

> (1) Improving the buyer's credit record, history, or rating;
>
> (2) Obtaining an extension of credit for a buyer; or
>
> (3) Providing advice or assistance to a buyer with regard to subdivision (1) or (2) of this subsection."

84.     Pursuant to § 407.635 RSMo., an "extension of credit" in this regard means "the right to defer payment of debt or to incur debt and defer its payment offered or granted primarily for personal family or household purposes."

85.     As detailed above, GreenSky, in the alternative to acting as a lender, acted as a credit services organization in its interactions with Plaintiff. Specifically, Defendant represented that it could (and it actually did) obtain an extension of credit for Plaintiff, and also provided advice and/or assistance in obtaining that extension of credit for a personal/family or household purpose.

86.     As detailed above, Defendant largely maintained "sole" discretion with regard to the terms of credit extended to buyers.

87.     This included the "sole authority to prescribe the terms and conditions of the credit application, the Loan Agreement, and each Loan (including, without limitations, interest rate maximum amount and term)."

88.     As mentioned above, Plaintiff received the GILA, a GreenSky-branded "shopping pass," and was to make payments directly to Defendant.

89.     As mentioned above, GreenSky's platform "auto-populates" credit applications.

90.     Pursuant to § 407.638(6) RSMo., a credit services organization (as well as their agents, salespeople, and independent contractors) may not "[a]dvertise or cause to be advertised,

in any manner whatsoever, the services of a credit services organization without filing a registration statement with the director of finance, unless otherwise provided by this chapter."

91.     Pursuant to § 407.638(4) RSMo., a credit services organization (as well as their agents, salespeople, and independent contractors) may not "[e]ngage, directly or indirectly, in a fraudulent or deceptive act, practice or course of business in connection with the offer or sale of the services of a credit services organization."

92.     Pursuant to § 407.638(1) RSMo., a credit services organization (as well as their agents, salespeople, and independent contractors) may not "[c]harge a buyer or receive from a buyer money or other valuable consideration before completing performance of all services the credit services organization has agreed to perform for the buyer, unless the credit services organization has obtained . . . a surety bond . . . or has established and maintained a surety account at a federally insured bank or savings-and-loan association located in this state . . .".

93.     Pursuant to § 407.641 RSMo., a credit services organization must make various disclosures in their contracts with buyers.

94.     ***Pursuant to § 407.642 RSMo., a credit services organization must provide buyers with a conspicuous, three-day "cooling off" provision and easily detachable notices of cancellation***.

95.     Per the Missouri Division of Finance's website, registration as a credit services organization is a simple process, requiring only a brief application and a $300 payment.

96.     ***That application form requests disclosure of litigation and unresolved complaints***.

97.     On information and belief, Defendant has received multitudinous complaints of unauthorized sales made by merchants on its platform.

14

98.    Defendant is and has been involved in litigation in a number of jurisdictions.

99.    Many states have enacted statutes very similar to Missouri's CSOA in an effort to protect consumers from a class of credit-related businesses that had theretofore been largely unregulated by the states.[12]

100.    On information and belief, GreenSky has long been on notice that such statutes exist. For example, it litigated the specific issue of whether it was a "credit service organization" under Florida's CSOA,[13] which is utilizes the same "credit services organization" definition as Missouri's statute.[14]

101.    Despite having built a business model around the extension of credit to consumers for family/household purposes, Defendant has apparently not even contacted the Missouri Division of Finance.

102.    Because Defendant has consistently acted as a credit services organization in Missouri without registering with the Division of Finance, it has repeatedly violated multiple Missouri statutory provisions.

**CLASS ACTION ALLEGATIONS**

103.    Plaintiff brings this action on behalf of himself and all other persons similarly situated pursuant to Missouri Rule of Civil Procedure 52.08.

104.    Moore proposes to represent all persons who meet the following class definition:

---

[12] *E.g.*, *infra*, n. 15; Cal. Civ. Code § 1789.12; W. Va. Code § 46A-6C-2; 815 Ill. Comp. Stat. Ann. 605/3; MD Code, Comm. Law, § 14-1901(e).

[13] *See Locicero v. Intrust Bank, N.A.*, Case No. 17-61484-CIV-GAYLES, 2018 WL 4374908, at *6-7 (S.D. Fla. Sept. 13, 2018) (denying GreenSky's motion to dismiss in part because GreenSky was a credit services organization). Similarly, in early 2015, an enforcement agent of New Jersey's Department of Banking and Insurance sent another GreenSky LLC a regulatory demand letter concerning "possible unlicensed loan activity as defined by the New Jersey Consumer Finance Licensing Act."

[14] *Compare* Fla. Stat. § 817.7001(2)(a) (defining credit services organization) *with* § 407.637.1 (using same definition of credit services organization).

15

==All consumers residing in Missouri who transacted business with and/or received funds from or through GreenSky on or after September 27, 2014.==

105.    Plaintiff reserves the right to amend the foregoing class definition or to define subclasses before this Court determines whether certification is appropriate.

106.    Plaintiff proposes that the following be excluded from the class: (1) any Judge(s) to whom this case is assigned and their staff; (2) Defendant, including any parent, sister, and/or subsidiary entity(ies); (3) any current employees of Defendant and/or Defendant's officers and directors; (4) counsel of record; and (5) any person who has previously settled these claims against Defendant.

107.    <u>Numerosity</u>. Although Moore does not presently know the exact number of individuals who would be members of the proposed Class, it is very likely that, upon information and belief, the Class is so numerous that joinder of all Class Members is impracticable. However, he is informed, and believes that they number in the hundreds, if not thousands. A review of Defendant's records would enable a determination of the precise number of persons in the proposed Class.

108.    <u>Commonality</u>. This case presents material questions of law and fact common to the proposed Class. Such questions include, but are not limited to:

    a.    Whether Defendant unlawfully failed to register with the Missouri Division of Finance, in violation of either § 408.510 RSMo./ § 367.100 RSMo. or § 407.638(6);

    b.    Whether Defendant has unlawfully acted as an unregistered consumer installment lender (or, more broadly, consumer credit lender), including but not limited to making consumer loans on an unlicensed basis, charging far in excess of § 408.140(1) RSMo.'s $100 fee cap, willfully evading the regulatory requirements set forth by the Division of Finance, and generally acting as a "rent-a-bank" scheme in which essential bank functions (such as identity verification) have been largely or wholly outsourced to GreenSky itself or a range of loosely monitored merchants;

    c.    Whether, in the alternative, Defendant has unlawfully acted as an

16

Electronically Filed - Jackson - Kansas City - October 02, 2019 - 03:35 PM

unregistered credit services organization, including but not limited to obtaining (and assisting with) extensions of credit for household purposes, advertising its services, failing to acquire the requisite surety bond before performing its services, directly or indirectly engaging in fraudulent or deceptive acts, failing to make the disclosures requires of a credit services organization, including allowance of a three-day "cooling off" period;

       d.      Whether, and in what amount, Plaintiff and the proposed Class are entitled to Damages;

       e.      Whether, and in what amount, Plaintiff and the proposed Class are entitled to Punitive Damages; and,

       f.      Whether Plaintiff and the proposed Class are entitled to Injunctive Relief.

109.   <u>Typicality</u>. Moore's claims are typical of the class members in that the claim centers upon GreenSky's unlicensed, consumer credit-related activities.

110.   <u>Adequacy</u>. Moore is and will be an adequate class representative in that he can and will act to protect and advance the interests of the proposed Class. Moore does not presently know of any conflicts of interest with the proposed Class. Further, Moore has retained experienced proposed Class Counsel in prosecuting cases such as this, who have and will continue to vigorously prosecute these claims.

111.   <u>Predominance</u>. The questions of law or fact common to the Class Members predominate over any questions affecting only individual Class Members. Defendant's course of conduct will be discovered without any need for participation by individual Class Members.

112.   <u>Superiority</u>. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. This action presents textbook facts and circumstances for the conduct of a class action to afford each individual Class Member a fair and efficient manner by which to prosecute his or her common claims and, likewise, a fair and efficient manner by which Defendants may defend such claims. Further, and upon information and belief, no overlapping classes have been filed against Defendant in Missouri. Management

17

of this case as a class will not be difficult given the significance and nature of the common questions.

113.   Individual Control. The interests of individual Class Members are best served by certifying this case as a class action.  Class Members' individual actual damages may only measure thousands to tens of thousands of dollars. By contrast, the undersigned counsel believe they will be compelled to invest tens, if not hundreds, of thousands of dollars in time, costs, and expenses in prosecution of this action in order to best prosecute (and win) these Class claims; and, if counsel represented only Plaintiff (vs. the entire Class), counsel would nevertheless be compelled to expend substantially all of the same time, costs, and expenses in the prosecution of this action on behalf of Plaintiff, individually. In the absence of a class action, individual Class Members would, in reasonable probability, be unable to prosecute (and win) their claims.

**COUNT ONE:**
**VIOLATIONS OF MISSOURI CONSUMER LENDING LAWS**

114.   Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

115.   Pursuant to § 408.510 RSMo., "consumer installment lenders" are required to be registered in Missouri.

116.   Pursuant to § 367.100 RSMo., "consumer credit lenders" are likewise required to be registered in Missouri.

117.   Pursuant to § 408.510 RSMo., a consumer installment lender "means a person licensed to make consumer installment loans."

118.   As described above, because Defendant GreenSky extended a loan of $10,000 to Plaintiff for household purposes and with a repayment plan entailing eighty-four (84) equal monthly installments, it acted as a consumer lender (installment and credit) with regard to

18

Moore's solar transaction.

119.    GreenSky has not registered as a consumer lender with the Missouri Division of Finance.

120.    Moore ultimately paid Defendant an exorbitant amount of interest for borrowing $10,000 for just over one year. This money was disbursed by GreenSky even though its merchant-partner had not supplied a signed contract with a total price term.

121.    Pursuant to § 408.140.1 RSMo. of the Consumer Loan Act, no additional fee "[o]n loans for thirty days or longer which are other than 'open-end credit' as such term is defined in the federal Consumer Credit Protection Act" may be charged beyond "ten percent of the principal amount loaned not to exceed one-hundred dollars . . .". This restriction applies here pursuant to § 408.510 RSMo.

122.    GreenSky routinely charges 7 to 14% fees on principal and which exceed $100.00, burdening individual consumers and merchants in varying, opaque amounts.

123.    By maintaining that it is not a consumer lender while nonetheless retaining substantial control of many, if not all, of a consumer lender's traditional functions, Defendant has made windfall profits by evading Missouri laws.

124.    More specifically, GreenSky, while it obtains program funds from partner banks, acts as a lender in numerous ways, including but not limited to its retention of substantial control over loan terms, control over which merchants are on its platform, disbursement of funds in the GreenSky name, immediate assumption of credit risk and consumer payments, substantial control over the credit application/loan origination process, control over credit application acceptances and rejections, control over individual consumer identity verification and due diligence, and profiting from de facto interest rate spreads and loan origination fees.

19

Electronically Filed - Jackson - Kansas City - October 02, 2019 - 03:35 PM

125.    In short, Defendant has improperly attempted to skirt the obligations expected of lenders while effectively acting as a relender; GreenSky is more than a mere loan servicer/program administrator and its partner banks seem to be quite passive with regard to GreenSky's extensions of credit.

126.    Pursuant to § 408.562 RSMo., "any person who suffers any loss of money or property as a result of any act, method or practice in violation of the provisions of section 408.100 to 408.561 may bring an action . . . to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing party in such action attorney's fees . . . and may provide equitable relief as it deems necessary and proper."

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for judgment against Defendant in such amount as is allowable by law and to be determined at trial, for his statutory damages, actual damages, injunctive relief, restitution, punitive damages, pre- and post-judgment interest at the greatest rate allowed by statute, reasonable attorneys' fees, and other and further relief as may be just and proper under the circumstances.

### In the Alternative to Count One
### COUNT TWO:
### VIOLATIONS OF THE MISSOURI CREDIT SERVICE ORGANIZATIONS ACT
### ("CSOA")

127.    Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

128.    Because Defendant GreenSky would be required to register with the Missouri Division of Finance as either a lender or as a credit services organization, this Count Two is pleaded in the alternative to the foregoing Count One.

129.    Pursuant to § 407.637 RSMo., a "credit service[s] organization is a person who, with respect to the extension of credit by others and in return for the payment of money or other

20

valuable consideration, provides or represents that the person can or will provide any of the following services:

> (1) Improving the buyer's credit record, history, or rating;
>
> (2) Obtaining an extension of credit for a buyer; or
>
> (3) Providing advice or assistance to a buyer with regard to subdivision (1) or (2) of this subsection."

130.    Pursuant to § 407.635 RSMo., an "extension of credit" in this regard means "the right to defer payment of debt or to incur debt and defer its payment offered or granted primarily for personal family or household purposes."

131.    As detailed above, if it did not act as a consumer "lender" with regard to the purchase of Moore's solar system, then Defendant acted as a "credit services organization" as to Plaintiff in that GreenSky obtained an extension of credit while also providing assistance in that regard.

132.    More specifically, if it did not act as a consumer lender in its interactions with Moore, then GreenSky acted as a credit services organization by, amongst other reasons, availing Plaintiff of the GreenSky credit platform, transmitting money from a partner bank, assuming the "credit risk" of the loan, providing Plaintiff with a GreenSky-branded "shopping pass," setting the ultimate loan terms, providing the GILA (including TILA disclosures underneath the GreenSky-branded heading), auto-populating the credit application, processing the credit application, and accepting payments directly from Plaintiff. At no point did Regions Bank of Alabama become involved with Moore other than as a bit of fine print.

133.    Pursuant to § 407.642 RSMo., a credit services organization must fulfill certain contractual requirements with buyers, including a conspicuous, three-day "cooling off" provision and easily detachable notices of cancellation.

Electronically Filed - Jackson - Kansas City - October 02, 2019 - 03:35 PM

134.    GreenSky did not fulfill these contractual requirements in its dealings with Plaintiff.

135.    Pursuant to § 407.641.1 RSMo., a credit services organization must provide a buyer with a "complete and detailed description of the services to be performed by the credit services organization for the buyer and the total cost of the services" *before* "executing a contract or agreement with a buyer or receiving money or other valuable consideration."

136.    Because Defendant purported to exercise the (confusing and opaque) "split plan" loan agreement and transmit funds to merchants before providing consumers (such as Plaintiff) with the GILA, it violated § 407.641.1 RSMo.

137.    Pursuant to § 407.638.1 RSMo., a credit services organization must obtain a surety bond or establish a security account per Missouri statute before charging a Missouri buyer for completion of all the services the organization was to perform for the buyer.

138.    On information and belief, GreenSky never obtained such a surety bond or established a security count before charging Moore for its services.

139.    Pursuant to § 407.638.4 RSMo., a credit service organization may not "[e]ngage, *directly or indirectly, in a fraudulent or deceptive act, practice or course of business in connection with the offer or sale*" of its services. (emphasis added)

140.    As described above, GreenSky indirectly engaged in a fraudulent or deceptive act by accepting a merchant-partner's contract that did not contain a total price term. Further, as mentioned above, GreenSky has established a pattern and practice of failing to adequately monitor its merchant-partners, particularly within the solar sector.

141.    Pursuant to § 407.640 RSMo., a credit services organization must file a registration statement with the director of finance before conducting business in Missouri.

142.     Defendant has done business in Missouri without registering with the Division of Finance, in violation of § 407.640 RSMo.

143.     Pursuant to § 407.638.6 RSMo., a credit services organization (as well as their agents, salespeople, and independent contractors) may not "[a]dvertise or cause to be advertised, in any manner whatsoever, the services of a credit services organization without filing a registration statement with the director of finance, unless otherwise provided by this chapter."

144.     GreenSky, through its merchants, has advertised its services in Missouri without filing the required registration statement.

145.     The aforementioned actions by Defendant were willful and knowing.

146.     Pursuant to § 407.644 RSMo., a buyer who is injured by a violation of § 407.635 to § 407.644 RSMo. may bring an action for recovery of damages for which "[t]he damages awarded may not be less than the amount paid by the buyer to the credit services organization, plus reasonable attorney's fees and court costs." Punitive damages may also be awarded.

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for judgment against Defendant in such amount as is allowable by law and to be determined at trial, for his statutory damages, actual damages, injunctive relief, restitution, punitive damages, pre- and post-judgment interest at the greatest rate allowed by statute, reasonable attorneys' fees, and other and further relief as may be just and proper under the circumstances.

## COUNT THREE:
## VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT
## ("MMPA")

147.     Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

Electronically Filed - Jackson - Kansas City - October 02, 2019 - 03:35 PM

148. The Missouri Merchandising Practices Act, § 407.010 *et seq*. RSMo. ("MMPA") prohibits unfair and deceptive acts and practices in the sale of goods and services in Missouri.

149. The sale, or alleged sale, of the solar system to Moore was a "sale" of "merchandise" as defined by the MMPA and was primarily for personal, family, or household purposes.

150. The sale of the solar system occurred within the state of Missouri.

151. Plaintiff has suffered an ascertainable monetary loss as a result of GreenSky's unlawful conduct, as described herein.

152. Pursuant to 15 C.S.R. § 60-8.020, **Unfair Practice in General**, an "Unfair Practice is any practice which – (A) either (1) offends any public policy as it has been established by the ... statutes or common law of this state or (2) is unethical, oppressive or unscrupulous; and (B) represents a risk of, or causes, substantial injury to consumers."

153. Pursuant to 15 C.S.R. § 60-8.090, **Illegal Conduct**, "(1) it is an unfair practice for any person in connection with advertisement or sale of merchandise to engage in any method, use or practice which – (A) violates state or federal law intended to protect the public; and (B) presents a risk of, or causes, substantial injury to consumers."

154. Pursuant to 15 C.S.R. § 60-9.040, **Fraud in General**, "(1) Fraud includes any acts, omissions or artifices which involve falsehood, deception, trickery, breach of legal or equitable duty, trust, or confidence, and are injurious to another or by which an undue or unconscientious advantage over another is obtained."

155. Pursuant to 15 C.S.R. § 60-8.040 **Duty of Good Faith**, "(1) It is an unfair practice for any person in connection with the advertisement or sale of merchandise to violate the duty of good faith in solicitation, negotiation and performance, or in any manner fail to act in good faith.

Electronically Filed - Jackson - Kansas City - October 02, 2019 - 03:35 PM

156.    Defendant GreenSky's violations of the MMPA include, but are not limited to, the following:

    a. Willfully failing to register with the Missouri Division of Finance despite extending and/or obtaining extensions of consumer credit in Missouri;
    b. Charging loan fees beyond those authorized by statute;
    c. Failing to make statutorily requisite disclosures, whether as a consumer lender or as a credit services organization;
    d. Disbursing funds to merchants before making proper disclosures to individual buyers;
    e. Failing to secure a surety bond or surety account in Missouri;
    f. Consistently failing to exercise reasonable due diligence of the merchants on its platform;
    g. Meanwhile, entrusting those merchants to properly verify the identification of consumers and authorize transactions; and
    h. Overseeing a de facto and misleading "rent-a-bank" business model that has realized windfall profits by skirting consumer lending and/or credit services regulations.

157.    Pursuant to § 407.025.1 RSMo., Plaintiff is entitled to the recovery of his actual damages, punitive damages, reasonable attorneys' fees, and equitable relief.

158.    Defendant's conduct as outlined herein was intentional, willful, wanton, fraudulent, reckless, and/or malicious, thereby entitling Plaintiff to the recovery of punitive damages.

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for judgment against Defendant in such amount as is allowable by law and to be determined at trial, for his statutory damages, actual damages, injunctive relief, restitution, punitive damages, pre- and post-judgment interest at the greatest rate allowed by statute, reasonable attorneys' fees, and other and further relief as may be just and proper under the circumstances.

## COUNT FOUR:
## DECLARATORY JUDGMENT

159.    Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

160.    As outlined above, Defendant is either a consumer installment lender, pursuant to

§ 408.510 RSMo., or a credit services organization, pursuant to § 407.635 RSMo.

161.    Plaintiff asks this Court to declare which Defendant is.

WHEREFORE, Plaintiff respectfully requests this Court declare whether Defendant is a

consumer installment lender or a credit services organization, along with any such further relief

as may be just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

162.    Plaintiff hereby demands a jury trial on all issues so triable.


Respectfully submitted,

*/s/ Mark W. Schmitz*
Bryce B. Bell          MO#66841
Mark W. Schmitz        MO#69329
Andrew Taylor          MO#72157
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, MO 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
MS@BellLawKC.com
AT@BellLawKC.com

Anthony Bonuchi        MO#57838
Bonuchi Law
601 Walnut, Suite 300
Kansas City, MO 64106
T: 816-944-3234
F: 816-944-3233
anthony@bonuchilaw.com

*Attorneys for Plaintiffs*